**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION,**
Plaintiff,

v.

**MARYLAND CASUALTY COMPANY,**
Defendant.

**Civ. No. 403–62.**

United States District Court
D. Puerto Rico.

Sept. 8, 1966.

Robert E. Schneider, Jr., San Juan, P. R., for plaintiff.

Rivera-Zayas, Rivera-Castero & Rua, San Juan, P. R., for defendant.

RUIZ-NAZARIO, Chief Judge.

FINDINGS OF FACT

1. The plaintiff, American Radiator & Standard Sanitary Corporation, is a corporation organized under the laws of the State of Delaware and a citizen thereof.

2. The defendant, Maryland Casualty Company, is a corporation organized under the laws of the State of Maryland, is a citizen thereof and has been duly

authorized to do and is doing business in the Commonwealth of Puerto Rico.

3. The matter in controversy herein exceeds the sum or value of $10,000.00, exclusive of interest and costs.

4. On the 21st day of April, 1960, the defendant issued Bond No. 90–678454, a true copy of which has been filed in the records of this case and is a part of the stipulation filed February 1, 1965, wherein Bertran-Walker Corporation is the principal, and defendant Maryland Casualty Company, is the surety. The obligees under said bond are Miramar Hotel Corporation (owner of the project) and Banco Crédito y Ahorro Ponceño (lender to said owner) and its general vinculatory condition reads as follows:

"NOW, THEREFORE, the condition of this obligation is such that, if Principal shall well and truly perform all the undertakings, covenants, terms, conditions and agreements of said Contract on its parts, and fully indemnify and save harmless Obligees from all cost and damage which they may suffer by reason of failure so to do, and fully reimburse and repay Obligees all outlay and expense which Obligees may incur in making good any such default, and further, that if Principal shall pay all persons who have contracts directly with Principal for labor or materials furnished pursuant to the provisions of said Contract, failing which such persons shall have a direct right of action against Principal and Surety under this obligation, subject to Obligees' priority, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

5. Bertran-Walker Corporation, had on or about February 15, 1960, entered into a construction contract with the obligee-owner mentioned in said bond, Miramar Hotel Corporation, for the installation of plumbing, air-conditioning, and mechanical ventilation required as per plans and specifications for the Miramar Charterhouse Hotel at San Juan, Puerto Rico.

6. Either by the terms of the contract mentioned in Finding 5 above, or by subsequent acts and conduct of the owner Miramar Hotel Corporation, the Principal, Bertran-Walker Corporation, was authorized to sub-contract the performance of part of the work contracted, and the supplying by a sub-contractor of part of the materials covered by said construction contract.

7. Pursuant to the express or implied authorization referred to in Finding 6 above, Bertran-Walker Corporation, on or about the same date in which it entered its Prime Construction Contract with the owner, i. e. February 15, 1960, had also entered into a sub-contract with Williams Plumbing Corporation for the performance by the latter of that portion of the prime-contract for the construction of the Miramar Charterhouse Hotel dealing with the supplying of a part of the materials covered by the prime-contract between Bertran-Walker Corporation and Miramar Hotel Corporation, referred to in Finding 5 above.

8. The plaintiff, American Radiator & Standard Sanitary Corporation, sold and supplied to sub-contractor, Williams Plumbing Corporation, certain materials required to be supplied for the performance of the latter's sub-contract with prime-contractor Bertran-Walker Corporation, which materials were in fact utilized and installed in the Miramar Charterhouse Hotel, under and pursuant to the terms of said sub-contract. Said materials had a value of $35,846.81.

9. Neither Williams Plumbing Corporation, nor any other person or party, has paid the plaintiff the aforesaid value of such materials.

10. The construction of the Miramar Charterhouse Hotel was not a public work, but rather was a private work.

11. No direct contract ever existed between the plaintiff, American Radiator & Standard Sanitary Corporation, and Bertran-Walker Corporation, the principal on said Bond No. 90–678454, issued by the defendant, Maryland Cas-

ualty Company, for the supplying of any labor or materials, or for the supplying of the materials herein found to have been furnished by the plaintiff.

From the preceding facts, the Court arrives at the following:

## CONCLUSIONS OF LAW

A. The Court has jurisdiction as regards the parties, subject matter, and amount in controversy in this action, pursuant to Title 28, Sec. 1332, U.S.C.A.

B. The plaintiff did not have any contract directly with Bertran-Walker Corporation, Principal under defendant's bond in question here for the furnishing of any labor or materials.

C. The materials furnished by plaintiff to the sub-contractor, Williams Plumbing Corporation, were not materials furnished pursuant to any direct contract between said plaintiff and said Bertran-Walker Corporation, Principal on said bond, under the terms thereof.

D. Under the laws of the Commonwealth of Puerto Rico as in force at the time the bond herein involved was issued, the question as to who were the parties entitled to sue the bonding company directly, was entirely governed by the conditions of the policy.

E. Judgment must be entered against the plaintiff with costs.

## MEMORANDUM

This is an action by the plaintiff, American Radiator & Standard Sanitary Corporation, as suppliers to Williams Plumbing Corporation, sub-contractor to Bertran-Walker Corporation, for the performance of certain work and the supplying of certain materials required under the prime-contract which the latter had with the Miramar Hotel Corporation (owner of the project) for the installation of plumbing, air-conditioning, and mechanical ventilation at the Miramar Charterhouse Hotel. The plaintiff seeks to collect from the defendant, Maryland Casualty Company, the value of the ma-

terials so supplied, out of a certain contract bond, in which said defendant is the surety, and which guarantees the owner, Miramar Hotel Corporation, and its lender, Banco Crédito y Ahorro Ponceño, the performance by the prime-contractor, Bertran-Walker Corporation, of the prime-contract, up to the contract price of $338,000.00.

The bond in question, so far as material here, provides as follows:

"NOW, THEREFORE, the condition of this obligation is such that, if Principal (Bertran-Walker Corporation) shall well and truly perform all the undertakings, covenants, terms, conditions and agreements of said Contract on its parts, and fully indemnify and save harmless Obligees (Miramar Hotel Corporation and Banco Crédito y Ahorro Ponceño) from all cost and damage which they may suffer by reason of failure so to do, and fully reimburse and repay Obligees all outlay and expense which Obligees may incur in making good any such default, and further, that if Principal shall pay all persons *who have contracts directly with Principal for labor or materials furnished pursuant to the provisions of said Contract*, failing which such persons shall have a direct right of action against Principal and Surety under this obligation, subject to Obligees' priority, then this obligation shall be null and void; otherwise it shall remain in full force and effect." (Emphasis and language in parenthesis supplied).

Defendant in its answer to the complaint, filed May 19, 1964, has alleged as a special affirmative defense that "plaintiff did not have contracts directly with principal (Bertran-Walker Corporation) for labor or materials furnished pursuant to the provisions of said contract." (Matter in parenthesis supplied).

From the stipulation of 29th January 1965, filed in the Clerk's office on February 1, 1965, under which this action has been submitted for final decision, it does not appear that plaintiff had at any time

a direct contract with Bertran-Walker Corporation for the furnishing of any labor or materials nor that the materials, the value of which the plaintiff is trying to collect from the defendant in this action, were supplied by the plaintiff pursuant to any direct contract between it and Bertran-Walker Corporation.

Since Cristy & Sánchez v. Commonwealth (1961) 84 P.R.R. 226, later followed by Aníbal L. Arzuaga Inc. v. Lahood Constructors Inc. and Maryland Casualty Company, R–62–307, decided February 20, 1964 (Referencia Colegio de Abogados 1964–36); Maryland Casualty Company v. Quick Construction Corporation and Carlos del Valle, R–62–213, decided May 8, 1964 (Referencia Colegio de Abogados 1964–71) Ulpiano Casal Inc. v. Totty Manufacturing Corp. and Maryland Casualty Company, et al., R–63–269, decided June 26, 1964 (Referencia Colegio de Abogados 1964–131); Edwin V. Goss v. Structural Concrete Products and Maryland Casualty Company, CE–64–11 decided on May 19, 1965 (Referencia Colegio de Abogados 1965–89) and culminating in Kermit E. Ferrer v. Alliance Company of P. R. Inc. and St. Paul Fire and Marine Insurance Co.—R–64–244, decided on January 4, 1966 (Referencia Colegio de Abogados 1966–1), the Supreme Court of Puerto Rico has been consistently relaxing and liberalizing the "strictissimi juris" rule of construction formerly prevailing in this jurisdiction in connection with suretyship contracts under the Civil Code (see Battle v. Pereyó, 67 P.R.R. (1947) 621; Morales v. Chabert, 43 P.R.R. 114 (1932); and Municipality of Fajardo v. Axtmayer, et al., 31 P.R.R. 780 (1923) which were expressly overruled in Cristy & Sánchez v. Commonwealth, supra).

■ However, this continuing tendency to liberalize said rule of interpretation has not been and cannot be carried as far as to discard or ignore express limitations contained in a contract of suretyship entered into prior to the adoption by the Legislature of Puerto Rico of the legislation on which the Supreme Court of Puerto Rico relied for establishing said modern rule of interpretation.

In its latest deliverance on the subject, i. e. Kermit E. Ferrer v. Alliance Company of P. R. Inc. and St. Paul Fire and Marine Insurance Co., supra, the Supreme Court of the Commonwealth cites with approval Sec. 165, pp. 457, 459 of the Restatement of the Law of Security, where the general rule is stated as follows:

"Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, *unless the surety's contract in terms disclaims liability to such persons.*" (At p. 457—Emphasis supplied).

Then at p. 459, appears the following comment:

"The surety is not liable to laborers and materialmen, even if he guarantees to government or a private owner that the contractor will pay for labor and materials, *if the surety in terms provides in his contract that his liability is only to the creditor with whom he contracts.* The surety in general is bound only on the contract he makes, and if he excludes any purpose to benefit those outside the contract, there will be no third party beneficiaries, assuming that the surety's provision is valid." (Emphasis supplied).

The Supreme Court of Puerto Rico, in the above cited case, made reference to Act No. 111 of June 22, 1961 (29 L.P.R.A. Sec. 195 et seq. 1964 Supl.) making mandatory the posting of a contractor's bond when the cost of the project is over $15,000.00 and providing, further, in Sec. 5 thereof, (29 L.P.R.A. Sec. 197, 1964 Supl.) that:

"Any person having a direct contractual relation with a subcontractor,

*regardless of whether or not he has any express or implicit contractual relation with the contractor* of the work, shall have a chose in action against the contractor, *the bond of the contractor, the sureties of the contractor,* or against any of them, *to recover* in full or in part *any sum due him by the subcontractor* of the work for salaries earned as employee of the subcontractor of the work." (Emphasis supplied).

Construing the last mentioned provisions of Sections 195 and 197, 29 L.P. R.A., the Supreme Court of Puerto Rico, in the above mentioned case held that:

"It is true that this law by its own terms appears to grant the right to sue to the laborers, but as regards the liability under the bond we have already decided that the subcontractor who in the performance of his subcontract furnishes and pays the wages of the laborers who work in the same, he comes to occupy the same position as a laborer. We have already advanced in Cristy & Sánchez v. Commonwealth, supra, at p. 239, that when a bond is required by the express provisions of a law, the description of the parties actually guaranteed should not be looked for in isolation in the bonding document, but rather this should be considered jointly with the terms of the contract and the statutory provision. And we added, 'In cases of policies required under statutory provisions, the statute is considered as forming part of the same.' Therefore, in the present case, if, *by virtue of the terms of the subcontract* of Alliance, said subcontract would include, as one of the assumed obligations, that of complying with the applicable provisions of law, the condition of the third clause, so many times mentioned herein, would have to give way, when confronted with the law that grants a direct action to those who furnish labor for a contract. The limitation over the right to sue could not prevail, and independently of the intention of the parties to exclude third parties from its benefits, the solution provided by law would govern." (Emphasis supplied).

Therefore, under said case of Ferrer v. Alliance Company of P. R., et al. supra, from which the Court has been quoting, a materialman or supplier situated similarly to the plaintiff herein would have a direct action against the surety on a bond with the prime-contractor, only when the following conditions obtain:

(a) When such bond has been executed on a date *subsequent* to September 20, 1961, date on which Act No. 111 of the Puerto Rican Legislature approved June 22, 1961 (T. 29 L.P.R.A., Sections 195, 197, 1964 Supplement) went into effect.

(b) That the sub-contract between Williams Plumbing Corporation (the subcontractor to whom the plaintiff supplied the materials, the value of which it seeks to collect herein) and the prime contractor, Bertran-Walker Corporation, as well as the prime-contract between the latter and Miramar Hotel Corporation, guaranteed by the defendant's bond, reference to the compliance with the applicable laws of the Commonwealth of Puerto Rico may have been made as constituting contractual obligations assumed thereunder by said sub-contractor and prime-contractor, respectively.

For the purposes of the present action, it is enough to find that the bond involved herein was executed on April 21, 1960, i. e. much earlier than the date on which Act No. 111 of the Puerto Rican Legislature went into effect or was even approved.

Thus, the terms and conditions of such bond, as regards the beneficiaries thereunder, cannot be considered in any way as having been set aside, or altered by the provisions of said subsequent statute.

The bond, therefore, does not guarantee plaintiff's claim herein, and defendant cannot be found directly liable to plaintiff thereunder.

12

This does not mean, however, that the herein plaintiff may not intervene in Civil Action No. 62–3 pending in the Superior Court of Puerto Rico, San Juan Part, in which Williams Plumbing Corporation, as the sole plaintiff, is suing IMEC of Puerto Rico, Inc., and Maryland Casualty Company, seemingly for the same debt which is the subject of this action.

The complaint herein must be dismissed and Findings of Fact, Conclusions of Law, and formal Judgment to that effect are being entered on this same date.